**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

REBECCA L. BORNSTEIN,                                    Case No. 1:17-cv-220

              Plaintiff,                                    Dlott, J.
                                                          Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.


**REPORT AND RECOMMENDATION**

Plaintiff Rebecca Bornstein filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents four claims of error for this Court's review.  As explained below, I conclude that the ALJ's finding of non-disability should be reversed and remanded because it is not supported by substantial evidence in the record.

## I.  Summary of Administrative Record

Within two weeks of a November 21, 2012 serious motor vehicle accident, Plaintiff filed applications for disability insurance benefits ("DIB") and for supplemental security income ("SSI"), alleging disability beginning on November 21, 2012 based upon a combination of physical impairments arising out her accident, as well as mental impairments.  After her claims were denied initially and on reconsideration, Plaintiff requested an evidentiary hearing.  On August 13, 2013, a hearing was held before Administrative Law Judge (ALJ) Billy Harris.  Plaintiff, represented by counsel, appeared and provided testimony; a vocational expert also testified. (Tr. 33-63).  On January 21,

2016, the ALJ issued a written decision, finding that Plaintiff was not disabled.  (Tr. 14-32).

Plaintiff was 41 years old on her disability onset date and remained a younger individual at the time of the ALJ's decision.  She has less than a high school education, having left school after the tenth grade, but is able to communicate in English.  Her only past work was unskilled, in food service and/or as a fast food worker.

The ALJ found that Plaintiff has multiple severe impairments, including degenerative disc disease, rib and back fractures status-post motor vehicle accident, deep vein thrombosis ("DVT"), depression, and anxiety.  However, none of Plaintiff's impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. (Tr. 20).  Instead, the ALJ determined that Plaintiff continued to retain the residual functional capacity ("RFC") to perform work at a light exertional level, with the following non-exertional restrictions:

> [S]he is further limited to never climbing ladders, ropes or scaffolds; occasionally balancing, stooping, climbing ramps and stairs; performing simple, routine, repetitive tasks and only occasionally interacting with coworkers, supervisors, and the general public.

(Tr. 22).  Although Plaintiff could not perform her past work, the ALJ found she still could perform jobs that exist in significant numbers in the national economy, including the representative occupations of sorter, packer, and cleaner. (Tr. 26).  Therefore, the ALJ concluded that Plaintiff is not under a disability.  The Appeals Council denied review, leading Plaintiff to file this judicial appeal.

In her Statement of Errors, Plaintiff argues that the ALJ erred by: (1) failing to account for her obesity; (2) failing to adequately account for her limitations in concentration, persistence, or pace; (3) failing to adequately account for her need to

2

elevate her legs above her heart level; and (4) failing to adequately evaluate medical opinion evidence. Although the issues presented are relatively close, I conclude that the first and fourth errors require remand.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the

3

Secretary may proceed without interference from the courts.  If the Secretary's decision

is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability

benefits, the Social Security Agency is guided by the following sequential benefits

analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial

gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's

impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's

impairments, singly or in combination, meet or equal a Listing in the Listing of

Impairments; at Step 4, the Commissioner determines whether or not the claimant can

still perform his or her past relevant work; and finally, at Step 5, if it is established that

claimant can no longer perform his or her past relevant work, the burden of proof shifts to

the agency to determine whether a significant number of other jobs which the claimant

can perform exist in the national economy.  *See Combs v.  Com'r of Soc. Sec.*, 459 F.3d

640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is

entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must

present sufficient evidence to show that, during the relevant time period, she suffered an

impairment, or combination of impairments, expected to last at least twelve months, that

left him unable to perform any job.  42 U.S.C. § 423(d)(1)(A).

**B.  Specific Errors**

**1.  The ALJ's Failure to Identify or Discuss Obesity**

Plaintiff first argues that this case should be reversed because the ALJ failed to

identify her obesity as a severe impairment at Step 2, and failed to consider obesity during

the remaining steps of the sequential analysis. At the hearing, Plaintiff testified that she is 5'7" and weighed 265 pounds. (Tr. 49). Multiple medical records confirm her obesity, although the reference in some records to her weight in kilograms makes her obesity less obvious to a layperson. (*See, e.g.* Tr. 510, noting morbid obesity; Tr. 591, noting body mass index of 42.38; Tr. 619, noting BMI of 42.9; Tr. 621, noting weight of 270; Tr. 652, noting weight of 289 and BMI of 45.32; Tr. 654, noting depression with worsening weight gain; Tr. 663, noting height of 5'6" and weight of 286). A January 2013 note also notes that Plaintiff's DVT "is likely caused by immobility and other risk factor (obesity)." (Tr. 592).

Nearly 20 years ago, Social Security regulations were revised to eliminate a presumptive finding of disability based upon obesity, for obvious reasons.[1] According to the Centers for Disease Control and Prevention, more than one-third of all adults in the United States (36.5%) are obese, the vast majority of whom are not disabled. *See* http://www.cdc.gov/obesity/data/adult.html (accessed on June 7, 2018). However, in recognition of the serious impact that obesity may have on an individual's ability to work, and to ensure adequate consideration of that issue at the administrative level, the SSA issued Social Security Ruling 02-1p, 2002 WL 34686281 (Sept. 12, 2002).[2] SSR 02-1p explains that "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." *Id.* The ruling also references the potential impact of obesity on mental impairments (such

---

[1] The Listing for obesity was eliminated in August 1999.
[2] SSR 02-01p replaced SSR 00-3p, 2000 WL 3395201 (May 15, 2000)

as depression) and fatigue. Therefore, SSR 02–1p requires consideration of a claimant's obesity not only at Step 2, but at all levels of the sequential analysis.

SSR 02-1p has been described as "more than a requirement that the ALJ mention the fact of obesity in passing." *Norman v. Astrue*, 694 F.Supp.2d 738, 741 (N.D. Ohio, 2010) (remanding where ALJ failed to recognize obesity and failed to determine whether it was a severe or non-severe impairment, rejecting Commissioner's contention that analysis was not required because record was clear that role of obesity was a "serious consideration"); s*ee also Morin v. Com'r of Soc. Sec.,* 259 F.Supp.3d 678, 683–84 (E.D.Mich. 2017) (where the ALJ found "severe" obesity; remand required because ALJ failed to determine effect of obesity on other impairments and on RFC).  In *Norman*, the court observed that "[o]ther courts have remanded even for a mere failure to consider obesity."  *Id.,* quoting *Macaulay v. Astrue*, 262 F.R.D. 381, 390 (D.Vt., 2009); *see also Boston v. Barnhart,* 332 F.Supp.2d 879, 885–886 (D. Md. 2004).

The Commissioner argues that the ALJ's failure to so much as mention the Plaintiff's obesity was - at most - harmless error, because Plaintiff herself failed to argue that her obesity was a limiting impairment either at the application level or during the evidentiary hearing, and also failed to point to any medical evidence that demonstrated any specific limitation due to obesity.  The undersigned agrees that the Plaintiff ultimately is responsible for proving that her obesity caused further limitation.   Although many claimants may fail to self-identify their obesity as a limiting factor on their applications, experienced counsel ordinarily presents the issue at the hearing level when warranted by the medical evidence of record.  It does not appear that counsel did that in this case.  In cases where the correction of an alleged error on remand would not impact the result, a court will not remand if "remand would be an idle and useless formality."  *See Wilson v.*

*Com'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon*, 394 U.S. 759, 766 n. 6 (1969)).

On the record presented, however, despite the troubling failure of Plaintiff herself to identify the issue, the undersigned cannot agree that any error was harmless. Here, the ALJ overlooked Plaintiff's obesity completely, in violation of SSR 02-01p, even though the medical evidence suggests that at least three of the "severe" impairments identified by the ALJ could be or were in fact impacted by Plaintiff's obesity. At the time of the automobile accident that coincides with her disability onset date, Plaintiff's weight was listed at 235 pounds (Tr. 64), but there is evidence that her weight increased significantly following the accident. On the one hand, under SSR 02-1p, "[t]here is no specific level of weight or BMI that equates with a 'severe' or 'not severe' impairment," and that the classifications of obesity similarly are not to be used to establish whether obesity is a "severe" impairment. *Id.* at *4. Nevertheless, it is notable that with a BMI greater than 40, Plaintiff's morbid, Class III obesity is classified as "extreme," reflecting the highest level of health risk. Indeed, records confirm Plaintiff's obesity and suggest that her obesity may have exacerbated her "severe" limiting conditions of DVT, depression, and musculoskeletal pain. For example, records specifically link Plaintiff's DVT and depression with her obesity and post-accident weight gain. (*See* Tr. 592, 654). One of Plaintiff's primary complaints was back pain. SSR 02-01p explicitly acknowledges the impact of obesity on musculoskeletal impairments as well as on mental impairments.

In arguing that any possible error was harmless, the Commissioner chiefly relies on *Cranfield v. Com'r of Soc. Sec.,* 79 Fed.Appx. 852, 857, 2003 WL 22506409 (6th Cir. 2003), a case in which the ALJ had at least *mentioned* the plaintiff's obesity), and the only

issue was whether *greater* discussion of obesity was required.    The Sixth Circuit answered that question in the negative:

> The ALJ did nothing more than mention Ms. Cranfield's obesity because neither Ms. Cranfield nor her doctors offered any evidence to suggest that her weight was a significant impairment. Since Ms. Cranfield's claims did not indicate that obesity was a significant impairment, the ALJ was not required to give the issue any more attention than he did.

*Id.*, 2003 WL 22506409, at *5.  Unlike in *Cranfield*, in this case the ALJ failed to include so much as a cursory reference to Plaintiff's obesity in his decision.[3]  Perhaps more importantly, the administrative decision under review in *Cranfield* was issued in March 2000, shortly after the elimination of the regulatory Listing for obesity, but well <u>before</u> the SSA's issuance of SSR 02-01p, which altered the landscape for the consideration of obesity in administrative decisions.    Therefore, *Cranfield* is both factually and legally inapposite.

Where an ALJ has acknowledged the issue, even a cursory reference to obesity may suffice if there is no evidence that it causes any limitations. "Social Security Ruling 02–01p does not mandate a particular mode of analysis." *Bledsoe v. Barnhart,* 165 Fed. Appx. 408, 411 (6th Cir. Jan. 31, 2006); *see generally, Speakes v. Com'r*, 2015 WL 4480562, at *4 (S.D.Ohio 2015) (finding no error where the ALJ explicitly discussed obesity despite a failure to reference 02-01p).   However, in nearly all of the cases cited by the Commissioner, the ALJ's decisions contained *some* reference to obesity that permitted the court to conclude that the ALJ had taken it into consideration. *See e.g., Essary v. SSA*, 114 Fed. Appx. 662, 667 (6th Cir. 2004) (without reference to

---

[3]The ALJ did ask Plaintiff's height and weight during the course of the hearing; however, that particular question is routine and included in virtually every hearing transcript.  There is no indication in this case that the ALJ actually considered the response in reaching his decision.

8

SSR 02-01p, affirming where obesity was listed among severe impairments and ALJ found that obesity "can reasonably be expected to result in some degree of functional physical and mental limitations"); *Nejat v. Com'r of Soc. Sec.*, 359 Fed. Appx. 574, 577, 2009 WL 4981686, at *3 (6th Cir. 2009) (holding that where claimant failed to list obesity and there was scant evidence of diagnosis of Class I obesity in the record, ALJ did not err by finding diagnosis "unreliable," listing obesity as "non-severe," and failing to further discuss under SSR 02-01p).

In contrast to the cases cited by the Commissioner, this Court has held that an ALJ's complete failure to even mention the claimant's obesity, where the medical record strongly suggests that obesity is relevant, will require remand:

> [T]he ALJ did not explicitly mention plaintiff's obesity in his discussion of the medical evidence, in his RFC finding, or anywhere else in his decision. The complete omission of any mention of plaintiff's obesity in the ALJ's decision distinguishes the instant matter from *Coldiron* and *Bledsoe* such that the undersigned cannot find that the ALJ properly considered this impairment.

*Heighton v. Com'r of Soc. Sec.*, 2013 WL 214695 (S.D. Ohio Jan. 18, 2013), 2013 WL 214695, at *10, adopted at 2013 WL 449893 (Feb. 6, 2014) (Dlott, J.); *contrast Reynolds v. Com'r of Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th 2011) (holding that an ALJ's failure to mention obesity is not reversible error where the claimant never raised it and no medical evidence either described her as obese, or suggested that her weight exacerbated her other conditions).

In addition to primarily relying upon cases that are factually distinguishable because the issue of obesity was at least briefly referenced, the Commissioner argues that any error was harmless because the ALJ relied upon agency reviewers who reviewed records that included a reference to her obesity. It is true that in some cases, an ALJ may properly account for a claimant's obesity by relying on the functional capacity assessment

of a physician who has taken obesity into account. *See Coldiron v. Com'r of Soc. Sec.,* 391 Fed. Appx. 435, 443 (6th Cir. Aug. 12, 2010). Thus, a failure to recognize obesity as a severe impairment, or to discuss non-severe obesity, will not necessarily require reversal. *See Bledsoe v. Barnhart,* 165 Fed. Appx. at 415 (ALJ considered claimant's obesity by mentioning it in his findings of facts and crediting medical opinions that considered claimant's obesity). However, in a more recent published decision, the Sixth Circuit clarified that reliance upon a consulting physician who ostensibly considered the plaintiff's obesity will not automatically satisfy SSR 02-01p. *See Miller v. Com'r of Soc. Sec.,* 811 F.3d 825, 835 (6th 2016) (holding that ALJ's reliance on non-examining physician who considered obesity on incomplete record was not sufficient, finding "the ALJ's limited discussion… arguably does not comply with SSR [02-1p] and certainly casts additional doubt upon whether there exists substantial evidence to support the ALJ's finding"); *accord Shilo v. Comm'r of Soc. Sec.,* 600 Fed. Appx. 956, 959 (6th Cir.2015) (holding that obesity "must be considered throughout the ALJ's determinations, 'including when assessing an individual's residual functional capacity' " (quoting SSR 02–1P, 2002 WL 34686281, at *1)).

In this case, the ALJ gave the most weight to the RFC opinions of two non-examining consultants who, as in *Miller*, did not have access to Plaintiff's complete medical records when they determined she was capable of light work. The consultants did not include any discussion of Plaintiff's obesity but did include a cursory reference to her BMI.

> 41 y/o female with history of back pain secondary to MVA [motor vehicle accident]. Posture and gait are normal with normal speed and station. Not able to squat, normal SLR. Forward flexion of the lumbar spine limited to 40/90, left lateral flexion limited to 10/25, left knee flexion limited to 90/150 and left hip flexion limited to 40/100 and right 70/100. Strength mildly reduced. BMI 46.

(Tr. 71, 107). Other than the above reference to the Plaintiff's BMI, there is no evidence that either of the consultants fully considered Plaintiff's obesity in the manner contemplated by SSR 02-01p.[4]

Where the record is ambiguous and on similar facts, both the Sixth Circuit and this Court have held that remand is required. *Accord Miller, supra; Smith v. Com'r of Soc. Sec.,* 2014 WL 4351517 (S.D. Ohio Sept. 2, 2014), *adopted at* 2014 WL 5502358 (S.D.Ohio Oct. 30, 2014) (finding reversible error because it was unclear if any of the physicians' reports upon which the ALJ relied actually took the claimant's obesity into account, where plaintiff's sleep apnea, depression, and musculoskeletal impairments all could be compounded by obesity); *see also Horn v. Commissioner of Social Sec.*, 2014 WL 5107598, at *8 (S.D. Ohio 2014) (remanding where claimant's obesity had increased since disability onset, and ALJ failed to sufficiently articulate consideration of obesity); *Brown v. Astrue,* 2010 WL 3069350, at *2 (S.D. Ohio Aug.4, 2010) (Smith, J.) (remanding for ALJ to "review the evidence concerning obesity and articulate [how] that was taken into account, as required by SSR 02–1p," where it was not clear whether any examining physician factored in the claimant's obesity); *Angelo v. Com'r of Soc. Sec.,* 2008 WL 3981450, at *4 (S.D. Ohio June 19, 2008) (remanding due to inadequately articulated analysis beyond Step 2 of the sequential analysis, holding that SSR 02-01p requires more where several severe impairments were compounded by obesity).

Finally, Defendant cites a published Michigan case in which a district court relied upon *Cranfield* for the proposition that a claimant's failure to specifically identify obesity

---

[4]The Defendant inadvertently failed to include the assessments of the non-examining physicians on whose opinions the ALJ chiefly relied when filing the administrative record. The undersigned directed the Commissioner to correct the record by filing the missing documents. (*See* Docs. 14, 15).

as an impairment may relieve an ALJ of any obligation to discuss obesity under SSR 02-01p.  *See Smith v. Astrue*, 639 F.Supp.2d 836, 846-47 (W.D.Mich. 2009).  With all due respect, for the reasons discussed, the undersigned finds more persuasive the more recent reasoning of the Sixth Circuit in *Miller,* and of this Court in both *Heighton* and *Smith.* To affirm on the basis of no analysis at all of Plaintiff's obesity in this case would require this Court to take on a "fill in the blank" role that is contrary to established Sixth Circuit precedent.  *See Norman v. Astrue,* 694 F.Supp.2d at 741; *Miller*, 811 F.3d at 835 (holding that while SSR 02-1p "does not mandate a particular mode of analysis, it directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." (internal quotation marks and additional citations omitted)); a*ccord, generally, Ritchie v. Com'r of Soc. Sec.*, 2015 WL 46121, at *8–9 (S.D.Ohio 2015) (remanding in part for failing to sufficiently consider obesity).

### 2. Evaluation of the Medical Evidence

The error in failing to address obesity in this case takes on greater import when considering the ALJ's evaluation of recent medical evidence, including an MRI, which no examining or consulting physician had occasion to review.

In contrast to the regulatory presumptions that ordinarily require an ALJ to give greater weight to examining consultants than to non-examining physicians, the ALJ here gave the most weight to the physical RFC opinions of the non-examining consultants (assessed by Dr. Ruiz, and affirmed by Dr. Brill), and only "some weight" to the opinions of the lone examining consultant, Dr. Jacobs.[5]  Dr. Ruiz issued his opinion on July 16, 2013; Dr. Brill affirmed Dr. Ruiz's assessment on August 27, 2013.  (Tr. 71, 107).  An ALJ

---

[5]The same regulatory presumptions require controlling weight to be given to the opinions of treating physicians, but no treating physician offered any opinions in this case.

may rely on non-examining consultants in appropriate circumstances, even in cases like this one where the non-examining source did not review a complete case record, so long as the ALJ has adequately considered that fact.  *Blakley v. Com'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3 (July 2, 1996)); *but see Miller*, 811 F.3d at 834 (remanding where the ALJ gave no indication that he had adequately considered the fact that the non-examining consultant did not review a complete case record prior to assigning significant weight to source's opinion).

Here, in contrast to the non-examining consultants who opined that Plaintiff remained capable of light work, examining consultant Dr. Jacobs opined in July 2013 that Plaintiff could sit and/or stand for only 1-2 hours, walk two blocks, and push/pull/lift/carry only up to 10 pounds. (Tr. 663-665).  The ALJ rejected most of Dr. Jacobs' RFC opinions as inconsistent with his clinical findings, and because his exam took place "only 8 months after the motor vehicle accident, and Dr. Jacobs …opined that [Plaintiff's] conditions *may* improve over time."  (*Id.*, emphasis added, quoting Tr. 664).  The ALJ described his postural limitations to be "overstate[d]," (Tr. 24), and reasoned that "later records do not reflect an ongoing level of limitation as alleged….[T]here are no significant modalities of treatment, and the most recent reports suggest that she is limited to over-the counter relievers." (*Id.*)

The non-examining consultant Dr. Ruiz whose opinion the ALJ adopted also conducted his review in July 2013, roughly a week after Dr. Jacobs performed his exam. Although Dr. Ruiz restated Dr. Jacobs's examination findings, it is not entirely clear whether he considered Dr. Jacobs's physical RFC *opinions*.  Ordinarily, when an examiner's RFC opinions have been discounted by a non-examining consultant, the latter will state some basis for his or her differing RFC opinions.  However, the record in this

case gives "no indication" that the non-examining consultants reviewed any "opinion evidence from any source." (Tr. 95, 107). In other words, the reviewing consultants refer only to the examination findings from Dr. Jacobs, and not to his opinions. (*See also* Tr. 65, stating "no" opinions received from Dr. Jacobs; Tr. 103, stating that a consultative examination is "required," and that the treating source was contacted but declined to perform that exam).

Despite the fact that the non-examining consultants' opinions are dated very close in time to Dr. Jacobs' opinions but without reference to those opinions (as opposed to Dr. Jacobs' exam findings), the ALJ indicated he had independently considered all later "longitudinal" evidence. The ALJ reasoned that the opinions of the non-examining consultants were entitled to the great weight based upon the ALJ's belief that the later evidence showed

> significant improvement within a year of the motor vehicle accident…. Specifically, from the one-year mark, the imaging studies, show only mild spinal conditions, the ultrasounds show no recurring thrombosis, and the claimant is showing only moderate symptomatology despite non-compliance and only treated with over-the-counter relievers.

(Tr. 24). The main imaging study relied upon by the ALJ was an MRI dated September 2014. The ALJ stated that the MRI report "supports a degenerative spine, [but that] the residuals of the motor vehicle accident do not appear to be significant after one year." (Tr. 23). The ALJ also cited an August 2014 clinical note wherein Plaintiff presented as a new patient to a physician who recommended conservative therapy as well as a referral to pain management for her increasing back pain. Plaintiff did not follow through on the latter referral. (Tr. 23-24). Defendant argues that the August 2014 treatment note and September 2014 MRI constitute substantial evidence to uphold the ALJ's physical RFC determination.

In contrast to the position taken by the Commissioner, the undersigned shares Plaintiff's concern that the ALJ overstepped his role by interpreting the September 2014 MRI of the lumbar spine in functional terms, despite the fact that no medical sources had reviewed that objective medical data. (Doc. 13 at 5). The issue is somewhat close given Plaintiff's relatively sparse treatment records. However, again considering the potential impact of the Plaintiff's obesity on her musculoskeletal issues, including her pain complaints, I conclude that remand is required. On the record presented, the ALJ appears to have made independent medical findings on the basis of the referenced MRI. *See e.g., Simpson v. Com'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009) (reversing where the ALJ substituted the doctor's medical opinion with his own in determining the degree of pain resulting from the condition from which the plaintiff suffers); *Mitsoff v. Com'r of Soc. Sec.*, 940 F. Supp. 2d 693, 702 (S.D. Ohio 2013) (remanding where the ALJ discounted medical opinion and formulated RFC based upon her own interpretation of raw medical evidence, including MRI); *Smiley v. Com'r of Soc. Sec.*, 940 F. Supp.2d 592, 600-601 (S.D. Ohio 2013) (cautioning against ALJs "relying on their own expertise in drawing RFC conclusions from raw medical data") (citations omitted).

### 3. Concentration, Persistence and Pace

In contrast to the errors just discussed, Plaintiff's claim that the ALJ failed to adequately account for her limitations in concentration, persistence, or pace is not persuasive. In assessing Plaintiff's level of mental impairment, the ALJ determined that Plaintiff has "no more than moderate difficulties" in concentration, persistence or pace, "based on her admitted ability to manage her personal finances, play computer games for hours, care for her grandchildren, and watch movies." (Tr. 21; *see also* Tr. 238-240, 265, 269). The ALJ gave "great weight" to an examining consultant, Dr. McKinney, who

"opined that short-term memory, attention, and concentration were limited." (Tr. 24, citing Tr. 672). In January 2013, Plaintiff was prescribed an antidepressant; she saw a counselor on 6 occasions. The ALJ found "functionally limiting depression and anxiety," (Tr. 25), and limited Plaintiff to "performing simple, routine, repetitive tasks, and only occasionally interacting with coworkers, supervisors, and the general public." (Tr. 22).[6]

Plaintiff argues that the limitation is insufficient to account for her moderate limitations in the absence of any pace or quota restrictions. *See, generally Ealy v. Com'r*, 594 F.3d 504, 515-517 (6th Cir. 2010) (finding hypothetical insufficient when it failed to include specific two-hour pace and speed limitations). In addition to Dr. McKinney's report, Plaintiff points to April 2013 treatment notes that document various psychological symptoms, including her reports of trouble concentrating on things such as reading a newspaper or watching television. (Tr. 586). Dr. Jacobs also noted that Plaintiff's understanding, memory, and sustained concentration were "abnormal." (Tr. 664).

The undersigned finds no reversible error in the ALJ's assessment of the record as a whole, including his reference to Plaintiff's fairly limited mental health treatment. (Tr. 25). "Contrary to Plaintiff's suggestion, *Ealy* 'does not stand for the proposition that a finding that a claimant is limited to 'simple work' is somehow legally deficient.'" *Dickerson v. Com'r of Soc. Sec.*, 2017 WL 4020521, at *20 (S.D. Ohio Sept.13, 2017) (quoting *Goodrich v. Com'r*, 2017 WL 1130023 at *4 (W.D. Mich. Mar. 27, 2017)). Many post-*Ealy* decisions have confirmed that in cases that do not include specific hourly restrictions, a limitation to simple, repetitive tasks is sufficient to accommodate a moderate impairment in concentration, persistence, and pace. *See, e.g., Smith-Johnson*

---

[6]Although state agency consultants opined that Plaintiff had no severe mental impairments at all, the ALJ appropriately gave their opinions "little weight."

*v. Com'r of Soc. Sec.*, 579 Fed. Appx. 426 (6th Cir. 2014); *Hicks v. Com'r*, Case No. 1:13-cv-425-SJD, 2014 WL 4748356 at *6 (R&R adopted Sept. 23, 2014); *Clayton v. Astrue*, 2013 WL 427407 at *7 (S.D. Ohio Feb. 1, 2013)(collecting cases); *Steed v. Astrue,* 2012 WL 1097003, at *9 (N.D. Ohio  Mar. 30, 2012).  As one court explained:

> *Ealy* does not require further limitations in addition to limiting a claimant to "simple, repetitive tasks" for every individual found to have moderate difficulties in concentration, persistence, or pace….Instead, *Ealy* stands for a limited, fact-based, ruling in which the claimant's particular moderate limitations required additional speed- and pace-based restrictions.

J*ackson v. Com'r of Soc. Sec.*, 2011 WL 4943966, at *4 (N.D.Ohio 2011).

Unlike in *Ealy*, no examining or reviewing consultant found that Plaintiff had any particular hourly speed and pace limitations.  Based upon the record evidence in this case, and the failure of Plaintiff to point to any medical evidence that would support any specific pace and production limitations, the undersigned concludes that substantial evidence supports the mental RFC as determined.

### 4.  The ALJ Plaintiff's Asserted Need to Elevate Her Legs

Plaintiff's contention that the ALJ failed to adequately account for her need to elevate her legs above her heart level is similarly unavailing.  Plaintiff points to a handful of clinical records noting edema or swelling in her lower extremities, and her own testimony that her doctors had advised her to elevate her leg above heart level every other day.  (Tr. 43-44).  Plaintiff's testimony came in response to the ALJ's question about what her doctors had advised for treatment of a blood clot relating to her diagnosis of deep vein thrombosis.  In addition to taking a blood thinner, Plaintiff testified:

A.  They tell me that I have to, like, elevate my leg every other day.  I get real bad swollen feet and my legs swell up really bad….

Q.  Okay.  So, you – you said your legs swell?
…
A.  Yes.

17

Q.  What causes your legs to swell?  Do you find any activities that cause it to – to swell?

A.  If I, like, walk or stand on it too long or –

Q.  Okay.  When you say you elevate your legs every other day, how long do you elevate them?

A.  For a couple hours.

(Tr. 44).

The undersigned finds no error.  Even if fully credited,[7] Plaintiff's own testimony that she elevates her legs for "a couple of hours" only every other day would not support an additional RFC limitation that she is required to elevate her legs above heart level *during working hours*.  There is no opinion evidence that supports any additional limitation for leg elevation during working hours.  *See Sorrell v. Com'r of Soc. Sec.*, 656 Fed. Appx. 162, 170 (6th Cir. 2016) ("the ALJ was not required to include a limitation for elevating legs in the RFC because, although there were some treatment records that mentioned leg elevation as a treatment for edema, no physician indicated that Sorrell's edema caused work-related limitations, and no medical expert opined that Sorrell would need to elevate her feet to waist level during the workday or even every day"); *Stumpf v. Com'r of Soc. Sec.*, Case No. 1:16-cv-991, 2018 WL 718611 (S.D. Ohio Feb. 6, 2018), adopted at 2018 WL 1175294 (affirming ALJ's rejection of treating physician's RFC opinion that plaintiff must elevate both legs at least two hours per day, finding substantial support for ALJ's RFC determination that plaintiff could elevate her legs during regular breaks).

In a loosely related claim, Plaintiff criticizes the ALJ's finding that Plaintiff's DVT and associated leg symptoms were regularly controlled with medication. (*See* Tr. 23,

---

[7]The ALJ made an adverse credibility determination, which Plaintiff has not appealed. (Tr. 23).

18

discussing "repeat evidence of non-compliance" including multiple occasions when Plaintiff experienced edema or DVT symptoms after reporting she had run out of her medication). Based on the undersigned's review of the medical records, that finding is substantially supported. (*See generally*, records discussed by ALJ at Tr. 23; Tr. 839-840; 705, 722, 741-44, 752). Plaintiff points to modest evidence that in 2015 she continued to experience knee pain and swelling. (Tr. 824-825, 839). As a whole, however, the evidence does not provide substantial support for a requirement that she needs to keep her legs elevated during the workday, or that she could not elevate her legs for "a couple of hours" "every other day" at the conclusion of her workday and/or on days she does not work.

Plaintiff alternatively argues that even if her DVT symptoms improved after her medication (Coumadin) was restarted, the ALJ's reliance on that fact was error, because her medication non-compliance allegedly was due to a lack of insurance. (Tr. 43). As the Defendant points out, the ALJ discussed multiple records that reflected non-compliance with prescribed treatment. With respect to her DVT symptoms in particular, when Plaintiff reported concerns about affording Coumadin to her doctor in November 2013, believing that it would cost $85.00, he informed her that she could obtain her medication for $4.00 from Wal-Mart, and she stated that she could afford that. (Tr. 23, 706). Therefore, substantial evidence supports the ALJ's finding that Plaintiff's DVT and associated symptoms were controlled on medication, and does not support Plaintiff's position that any periods of medication non-compliance, during which her symptoms increased, were due solely to her inability to afford the medication.

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **REVERSED AND REMANDED under sentence four,** for further consideration of the evidence consistent with this Report and Recommendation, and that this case be **CLOSED.**

_/s Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

REBECCA L. BORNSTEIN,                                   Case No. 1:17-cv-220

              Plaintiff,                          Dlott, J.
                                                        Bowman, M.J.
    v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).